**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

TONY G. ROBINSON, SR., :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant. :

Case No. 3:07-cv-194

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on January 26, 2004, alleging disability from July 26, 2003, due to a back impairment, arthritis, and fibromyalgia. (Tr. 63-65; 77-86). Plaintiff's application was denied initially and on reconsideration. (Tr. 45-49; 51-53). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 290-316), who determined that Plaintiff is not disabled. (Tr. 22-37). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the final decision of the Commissioner.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe lumbar degenerative disc disease with residuals of surgery, myofascial pain syndrome (possible fibromyalgia), and possible situational depression, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 29, ¶ 3; Tr. 31, ¶ 4). Judge

Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 31, ¶ 5). Judge Padilla then used sections 202.10 through 202.12 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 36, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 37, ¶ 11).

Plaintiff was first treated for complaints of low back pain in 1996. *See*, *e.g.,* Tr. 126; 127-28. Plaintiff was again treated for low back pain in 1998. *See* Tr. 129; 130; 131-36.

In 1998, Plaintiff also complained of diffuse musculoskeletal pain and he was referred to a rheumatologist, Dr. Henderson. (Tr. 139-43). When Dr. Henderson examined Plaintiff on March 9, 1998, he reported that Plaintiff had some tenderness in the left sacral notch as well as both trochanteric bursae, tenderness over the third and fourth intercostal spaces secondary to costochondritis, and a remaining unremarkable joint exam. *Id.* Dr. Henderson noted that there was no muscle tenderness. *Id.* Dr. Henderson identified Plaintiff's diagnoses as degenerative disc disease with a history of sciatica, possible fibromyalgia syndrome, and exogenous obesity. *Id.*

In August, 2003, Plaintiff underwent a right L4-microdiskectomy which Dr. Poelstra performed. (Tr. 144-67). Plaintiff tolerated the procedure well and was discharged in stable condition. *Id.*

On October 27, 2003, Plaintiff consulted with physical medicine specialist Dr. Johnson who reported that Plaintiff had a long standing history of diffuse back pain, a history of multiple courses of physical therapy as well as treatment by a chiropractor, and back surgery in August, 2003. (Tr. 169-72). Dr. Johnson also reported that Plaintiff had a history of fibromyalgia

which was diagnosed seven years ago by Dr. Henderson, that Plaintiff was complaining of recurrent/persistent mid and low back pain, and that Dr. Poelstra felt that he would benefit from physical medicine and rehabilitation evaluation and treatment. *Id.* Dr. Johnson noted that Plaintiff had symmetrical and normal strength in the upper and lower limbs, deep tendon reflexes of 1 to 2+ and symmetrical, negative Babinski and Hoffman signs, intact sensation, and areas of tenderness over the mid to lower thoracic paraspinals with less tenderness over the lumbar paraspinals. *Id.* Dr. Johnson opined that Plaintiff's diagnoses were status post L4-L5 diskectomy by history, history of fibromyalgia and deconditioning. *Id.* Dr. Johnson recommended a course of physical therapy for general reconditioning. *Id.*

On December 1, 2003, Dr. Johnson reported that Plaintiff had been involved in physical therapy, but felt that his pain had intensified with simple stretching exercises for his hamstring, that the pain down his leg felt just like it did before surgery, that a recent MRI showed some granulation tissue without any frank recurrence of the disc herniation, and that Plaintiff did not feel he could tolerate resuming the physical therapy. *Id.*

In January, 2004, Plaintiff consulted with physical medicine and rehabilitation specialist Dr. Pedoto who reported that Plaintiff was tender in the fibromyalgia tender points in the neck, low back, greater trochanter, pes anserine bursa, the Achilles tendon region, and the pectoral muscles, that there was no tenderness in the control points, that he declined testing of the lumbar range of motion due to discomfort, that Plaintiff was tender in the cervical, thoracic, and lumbosacral paraspinals, and that there was no tenderness over the IS joints. (Tr. 173-79). Dr. Pedoto also reported that Plaintiff's straight leg raising was negative, pelvic compression was negative, upper and lower extremities strength, sensation and reflexes were normal, gait and

transfers were unremarkable, and that Plaintiff could walk a short distance on his heels and toes and do a partial deep knee bend. *Id.* Dr. Pedoto noted that Plaintiff's prominent problem appeared to be fibromyalgia-related and muscular pain and that it appeared to have become quite severe. *Id.* Dr. Pedoto also noted that Plaintiff had not tolerated any trials of standard physical therapy in the past, and that a pain management consultation would be an appropriate option to consider. *Id.*

Plaintiff consulted with pain management specialist Dr. Smith in February, 2004, and Dr. Smith reported at the time he evaluated Plaintiff his upper extremities muscle strength was 5/5, reflexes were 2+ bilaterally, and that Plaintiff had normal sensation to light touch. (Tr. 185-87) Dr. Smith also reported that Plaintiff had diffuse pain over the cervical-thoracic spine, diffuse pain over the lower lumbar back area of his facet and sacroiliac joint regions aggravated by flexion, extension, and lateral rotation of the lumbar spine, and that he had diffuse pain radiating to the lower extremities. *Id.* Dr. Smith noted that Plaintiff had 1- reflexes of the Achilles and patella tendons, and he identified Plaintiff's diagnoses as status post lumbar laminectomy syndrome and fibromyalgia. *Id.*

Plaintiff began receiving mental health treatment from psychologist Dr. Green in September, 2004, for major depression. (Tr. 195-211). Dr. Green reported on March 20, 2005, that Plaintiff was depressed because of the life changes, a result of the chronic pain that he had endured, that he explained the pain was associated with arthritis and fibromyalgia, and that he had been unable to work since his back surgery. *Id.* Dr. Green also reported that Plaintiff's self esteem was low and his depression high due to feelings of helplessness and hopelessness, that his therapy focused on those issues in an attempt to increase his self worth, and that his inability to provide financially for his family had heightened his depression. *Id.* Dr. Green opined that Plaintiff was an

intelligent, capable, and caring person who had been drastically limited by uncontrolled pain. *Id.* Dr. Green opined that Plaintiff was not able to perform any work-related mental activities, that he had extreme limitations in activities of daily living, extreme difficulties in maintaining social functioning, and extreme deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Id.* Dr. Green also opined that Plaintiff had poor or no abilities with respect to making occupational adjustments, good to poor to no abilities with respect to making performance adjustments and good to fair to poor to no abilities with respect to making personal-social adjustments. *Id.*

Treating physician Dr. Avery of the SureCare Medical Center Facility reported on March 25, 2005, that Plaintiff had been a patient at SureCare since 1991 and that he (Dr. Avery) had been primarily responsible for his health care since 1996, that the medical problems for which Plaintiff was treated were chronic anxiety disorder, type II diabetes, lumbar disc disease with chronic low back pain, seasonal allergic rhinitis, and elevation of blood pressure. (Tr. 212-53). Dr. Avery declined to complete a physical assessment form and recommended that such assessment be done by ProWork. *Id.* However, Dr. Avery opined that Plaintiff was not capable of performing many work-related mental activities and that he would not be able to attend work regularly due to exacerbation of pain. *Id.*

Treating physician Dr. Henderson reported on March 29, 2005, that he has been treating Plaintiff since March 9, 1998, that his initial impression was that Plaintiff had degenerative disc disease with a history of sciatica associated with fibromyalgia and exogenous obesity, that he was followed primarily for fibromyalgia and treated with anti-inflammatories and mood elevators, that he was not seen from 1998 until 2004, and that a re-evaluation performed on April 22, 2004,

7

resulted in a diagnoses of fibromyalgia and degenerative disc disease. (Tr. 254-68). Dr. Henderson also reported that a whole body bone scan showed degenerative changes in the right knee with other joints being essentially unremarkable, that Plaintiff's subsequent visits were at about every two to three months primarily for fibromyalgia, that he was being treated with muscle relaxants and anti-inflammatory therapies, and that he continued to be unable to participate in gainful employment. *Id.* Dr. Henderson opined that Plaintiff was able to lift/carry less than five pounds occasionally, that he was able to stand/walk for less than one hour during an eight hour day and for less than one hour without interruption, could sit for less than two hours in an eight hour day and for less than two hours without interruption, that he could never climb, balance, stoop, crouch, kneel, or crawl, and that he was not capable of performing either light or sedentary work. *Id.*

Dr. Pedoto reported on April 7, 2005, that Plaintiff was able to lift/carry five to ten pounds occasionally and less than five pounds frequently, that he was able to walk for one hour in an eight hour day and for one quarter hour without interruption, able to sit for four hours in an eight hour day and for less than one hour without interruption, that he could occasionally balance and crouch but never climb, stoop, kneel, or crawl, and that he was not capable of performing either light or sedentary work. (Tr. 269-73).

Examining physician Dr. Duritsch reported on March 22, 2006, that Plaintiff had no gait abnormalities, was able to mount and dismount the exam table independently, that there was no focal muscle weakness in his arms or legs, and that he had a normal ability to grasp and manipulate. (Tr. 274-82). Dr. Duritsch also reported that Plaintiff had normal sensation in his upper limbs, that exam of the lower limbs found no focal weakness or atrophy, deep tendon reflexes were 1+ and symmetrical, straight leg raise was negative, and that there was no vasomotor changes in the lower

8

limbs. *Id.* Dr. Duritsch noted that Plaintiff's sensation was decreased in a right L5 dermatome distally in the lower limbs, that plantar reflexes were downgoing, Romberg's sign was negative, that Plaintiff was able to walk on his toes and heels with 5/5 strength, and that there was myofacial tenderness and tightness in the bilateral cervical paraspinals, bilateral lumbar paraspinals, and bilateral lateral epicondyles. *Id.* Dr. Duritsch noted that Plaintiff had decreased cervical and lumbar ranges of motion and myofacial findings, that there were no focal neurological findings, that he was status post microdiskectomy, and that the objective basis for the limitations he found includes Plaintiff's decreased range of motion and myofacial findings as well as the previous disc protrusion. *Id.* Dr. Duritsch opined that Plaintiff was able to lift/carry up to 30 pounds occasionally and up to 15 pounds frequently, stand/walk for four to five hours in an eight hour day and for one to two hours without interruption, sit for four-six hours in an eight hour day and for one to two hours without interruption, that he could occasionally climb, stoop, crouch, kneel, and crawl, and that he had no environmental restrictions. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by rejecting the opinions of his treating physicians and by failing to properly consider his fibromyalgia. (Doc. 8).

In support of his first Error, Plaintiff essentially argues that the Commissioner erred by rejecting Drs. Green's, Pedoto's Avery's, and Henderson's opinions that his is disabled.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of

treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by

10

the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

The Commissioner's regulations provide that a treating physician's opinion will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence ... in [the] record ... ." 20 C.F.R. §404.1527(d)(2); *see also,* 20 C.F.R. §416.927(d)(2). The regulations provide further that when a treating physician's opinion is not given controlling weight, the Commissioner is to consider certain factors in determining what weight to give the opinion. *Id.* These factors include length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the extent to which the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and the physician's area of specialty. 20 C.F.R. §404.1527(d)(2)-(6); *see also,* 20 C.F.R. §416.927(d)(2)-(6).

In rejecting Dr. Green's opinion that Plaintiff is disabled, Judge Padilla noted that Dr. Green treated Plaintiff on only five occasions, she did not provide any objective evidence that she performed testing or in-depth mental status examination, and that Plaintiff did not seek any further treatment from Dr. Green after she offered her opinion that Plaintiff was disabled. (Tr. 34).

This Court cannot say that the Commissioner erred by rejecting Dr. Green's opinion. As Judge Padilla noted, the record establishes that Dr. Green saw Plaintiff on only five occasions, *see,* Tr. 195, and there is no evidence that she treated Plaintiff after she offered her March 20, 2005, opinion. *See,* Tr. 196-211. In addition, Dr. Green's clinical notes are essentially recitations of

11

Plaintiff's subjective complaints and do not contain any objective clinical findings or test results. *See,* Tr. 209-11. Accordingly, Dr. Green's treatment relationship with Plaintiff was, at best, short-term and her opinion was not supported by either objective clinical findings or by objective test results.

With respect to Dr. Pedoto's opinion that Plaintiff was not able to perform full-time work activities, in rejecting that opinion, Judge Padilla first noted that Dr. Pedoto saw Plaintiff on only one occasion and therefore did not qualify for treating physician status. *See,* Tr. 32. Judge Padilla also noted that Dr. Pedoto reported essentially normal findings. *Id.*

Again, the Commissioner had an adequate basis for rejecting Dr. Pedoto's opinion. First, as Judge Padilla noted, the record reflects that Dr. Pedoto saw Plaintiff on only three occasions during an eight-year period, two of which were prior to Plaintiff's alleged onset date. *See,* Tr. 173-79. In addition, although Dr. Pedoto reported that Plaintiff's pain appeared to have become "quite severe", he noted that Plaintiff had, at worst, tenderness of the spine. *Id.* Finally, Dr. Pedoto offered his opinion that Plaintiff was not capable of performing either light or sedentary work over one year after he last examined Plaintiff. *See,* Tr. 227 and Tr. 269-73. Under these facts, the Commissioner did not err by determining that Dr. Pedoto was not a treating source or by concluding that his opinion was not supported by objective clinical findings. Accordingly, the Commissioner had an adequate basis for rejecting Dr. Pedoto's opinion and did not err in that regard.

In rejecting Dr. Avery's opinion, Judge Padilla noted that although Dr. Avery opined that Plaintiff was not able to perform many of the work-related mental activities, Dr. Avery is a family practitioner and not a mental health expert. *See,* Tr. 32. In addition, Judge Padilla noted that Dr. Avery declined to complete a physical evaluation form although he offered an opinion as to

12

Plaintiff's abilities to perform work-related mental activities, that the clinical findings in Dr. Avery's office notes did not indicate disability, and that his findings were similar to the findings Dr. Duritsch reported. *Id.*

This Court cannot say that Judge Padilla erred in his analysis of Dr. Avery's opinion or that he did not have an adequate basis for rejecting that opinion. First, the record indeed reflects that Dr. Avery is a family practitioner and not a mental health expert. *See,* Tr. 212. As such, giving an opinion as to Plaintiff's abilities with respect to his abilities to perform work-related mental activities was outside his area of expertise. In addition, Dr. Avery's clinical notes reflect few, if any, positive clinical findings. *See,* Tr. 227-53. Indeed, many of those clinical notes simply reflect Plaintiff's subjective complaints or that Plaintiff received allergy shots or prescriptions for pain medication. *Id.* The Commissioner had an adequate basis for rejecting Dr. Avery's opinion.

As to Dr. Henderson's opinion, Judge Padilla acknowledged that he was a treating source. *See,* Tr. 33. However, Judge Padilla rejected Dr. Henderson's opinion on the basis that it was not supported by objective medical evidence. *Id.* Judge Padilla also noted that Dr. Henderson, as well as Dr. Avery, prescribed narcotic pain medications but that the normal treatment for fibromyalgia was exercise and trigger point injections. *Id.*

First, the Count notes that Plaintiff last saw Dr. Henderson in April, 1998, at which time Dr. Henderson reported that Plaintiff was doing "quite well". *See,* Tr. 137. Plaintiff did not see Dr. Henderson again until 2004. *See,* Tr. 265. Indeed, Dr. Henderson noted on April 22, 2004, that he had last seen Plaintiff "about 5 years ago". *Id.* During the almost two year period of April, 2004, through February, 2006, Dr. Henderson saw Plaintiff on only ten occasions. *See,* Tr. 260-62; 264-68; 283-89. Although they do occasionally document "diffuse tender points", Dr. Henderson's

13

clinical notes which cover that period are essentially a recitation of Plaintiff's subjective complaints and reviews of medications Dr. Henderson prescribed for Plaintiff. *Id.* Aside from "diffuse tender points", those clinical notes contain few, if any, objective findings. *Id.* Accordingly, the Commissioner had a reasonable basis for rejecting Dr. Henderson's opinion.

In reaching these conclusions about the treating physicians' opinions, the Court is aware that the Sixth Circuit has recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). In addition, the Court notes that fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. *Rogers, supra.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).

The Court notes that none of the treating physicians' reports or clinical notes reveal that they tested a "series of focal points for tenderness" or that any of them "rul[ed] out .. other possible conditions through objective medical and clinical trials". Indeed, as noted above, Dr. Henderson documented, at best, diffuse trigger points.

Because the Commissioner did not err by rejecting Drs. Green's, Avery's Pedoto's and Henderson's opinions, he properly turned to Dr. Duritsch's and the reviewing physicians' opinions, (*see,* Tr. 188-93), when reaching his conclusion as to Plaintiff's residual functional capacity.

In support of his second Error, Plaintiff challenges the Commissioner's credibility findings. Essentially, Plaintiff's position is that the Commissioner's credibility findings are in error because he misunderstood the record.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

First, Plaintiff argues that Judge Padilla erred by determining that he (Plaintiff) stopped seeing Dr. Avery and Dr. Green because he testified that he continued to see those physicians. Indeed, Plaintiff testified that he continues to see Drs. Avery and Green, (Tr. 297-98). However, Judge Padilla concluded that Plaintiff "saw Dr. Green only five times and did not follow up once she completed the assessment indicating he was disabled", and that when Dr. Avery completed a mental health assessment but did not complete a physical capacity assessment, Plaintiff "no longer followed up with him". (Tr. 35). The record does not contain any clinical notes from either Dr. Green or Dr. Avery which are dated after March, 2005, when each of those physicians completed evaluation forms for Plaintiff. *See* Tr. 195-211 (Dr. Green); *see also,* Tr. 212-53 (Dr. Avery). In addition, at the beginning of the hearing before Judge Padilla, Plaintiff, through counsel, represented that, with the exception of updated treatment notes from Dr. Henderson, the record was

15

complete. *See* Tr. 292. In view of the documentary evidence in the record and Plaintiff's representation that the record was complete and in spite of Plaintiff's testimony it was not unreasonable for the Commissioner to conclude that Plaintiff had not seen either Dr. Green or Dr. Avery since March, 2005.

Second, Plaintiff challenges Judge Padilla's credibility findings on the basis that his complaints to his physicians have been consistent and that his physicians believe him. However, it was the Commissioner's function to determine Plaintiff's credibility, not the treating physicians' responsibility. Judge Padilla specifically determined that, although Plaintiff was credible to the extent of having a severe impairment, his statements concerning the intensity, duration, and limiting effects of those impairments were not entirely credible. *See* Tr. 35. A review of the record indicates that Judge Padilla had an adequate basis for reaching that conclusion. For example, there are few, if any, objective medical findings which support Plaintiff's allegations of disability. Keeping in mind the fact that individuals who allegedly have fibromyalgia may not exhibit positive physical findings other than trigger points, the record reveals that Dr. Henderson reported, at worst, "diffuse trigger points". In addition, as noted above, Judge Padilla had an adequate basis for concluding that Plaintiff stopped receiving treatment from both Dr. Green and Dr. Avery after each health care provider provided Plaintiff with a statement that he was disabled.

Under these facts, the Commissioner did not err by finding that Plaintiff was not entirely credible.

It is irrelevant that, on judicial review of the Commissioner's decision, the Court might reach a different conclusion. Rather, the Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See,*

16

*Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 20, 2007.

> *s/ Michael R. Merz*
> Chief Magistrate Michael R. Merz

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).